UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BENJAMIN WAGNER,                         )
                                         )
                Plaintiff,               )
                                         )
        v.                               )        Case No. 4:12CV01901 AGF
                                         )
CITY OF SAINT LOUIS DEPARTMENT           )
OF PUBLIC SAFETY, et al.,                )
                                         )
                Defendants.              )

## MEMORANDUM AND ORDER

Plaintiff Benjamin Wagner proceeding *pro se* and *in forma pauperis* brings this

action against Defendants, the City of Saint Louis Department of Public Safety (the

"SLDPS") and Leonora (Muhammad) Hatter, the Director of Nursing at the St. Louis

City Justice Center (the "CJC"), alleging, pursuant to 42 U.S.C. § 1983, violation of his

constitutional rights.[1]  Plaintiff was, at the times relevant to this suit, a pretrial detainee in

the custody of  the CJC.[2]  Plaintiff asserts that Defendant Hatter unlawfully denied his

requests for prescription eyeglasses, and that the SLDPS violated his rights under the

Eighth Amendment pursuant to a policy to deny prescription eyeglasses until they have

been incarcerated for one year.

This matter is before the Court on Plaintiff's motions to amend the complaint, for

---

[1]      Plaintiff originally named two other Defendants, Janice Fairless and Jazeall Brown
against whom Plaintiff asserted claims that he was denied his mail.  Plaintiff failed to
provide addresses for service upon either of these individuals and the Court dismissed the
claims against them without prejudice for failure to prosecute.  *See* Doc. No. 33.

[2]      As of the date of this Order, Plaintiff is no longer an inmate at the CJC.

protective order, to compel, and for injunctive relief with respect to certain conditions of his confinement.[3]  Also before the Court is Defendants' motion for summary judgment. For the reasons set forth below, Plaintiff's motions are denied and Defendants' motion for summary judgment is granted.

I. **Procedural Background**

The procedural history relevant to the motions pending before the Court is set forth below.

Plaintiff filed this case on October 15, 2012.  Plaintiff was granted *in forma pauperis* status and certain of his claims were dismissed pursuant to 28 U.S. C. § 1915(e)(2)(B).  Under the Case Management Order ("CMO") entered in the case, all motions for amendment of pleadings were to be filed not later than May 6, 2013, and all discovery including the filing of motions to compel was to be completed by October 7, 2013.  *See* Doc. No. 24 at ¶ 4 (providing that "[p]arties shall file motions to compel in a prompt manner and in no event after the discovery deadline").

On May 3, 2013, Plaintiff requested leave to amend his complaint to add a claim and parties alleging that the SLDPS and two individual SLDPS employees violated his First Amendment rights by withholding his mail from May, 2012 to May, 2013.  The Court granted that motion.  *See* Doc. No. 39.  Thereafter, Plaintiff failed to file or serve

---

[3]    Two of the three pending motions for injunctive relief relate to conditions at the CJC. The third motion relates to conditions at the Eastern Regional Diagnostic Correctional Center ("ERDCC") at Bonne Terre, Missouri, where Plaintiff was housed from March 2014 through June 2, 2014.

an amended complaint with respect to these allegations and therefore, this portion of his suit will be dismissed for failure to prosecute.

On June 21, 2013, Defendants made their initial disclosures producing approximately 500 pages of documents including Plaintiff's medical records. As discovery proceeded, Defendants also responded to Plaintiff's interrogatories and requests for production and admission. On September 17, 2014, Plaintiff filed a "Motion for Production of Discovery," which the Court construed as a motion to compel. The motion was denied on October 9, 2013, because Plaintiff failed to identify any discovery requests that Defendants had not responded to in a timely fashion. *See* Doc. No. 64. In addition, the Court extended the discovery period set forth in the CMO through October 17, 2013, to permit Plaintiff additional time to respond to Defendants' discovery requests. *See id*.

On October 18, 2013, Plaintiff filed a "Stipulation for Protective Order." However, the "stipulation" contained no indication that the parties had in fact agreed upon its terms. On October 25, 2013, more than five months after the expiration of the time period for amending the complaint, Plaintiff moved for leave to amend his complaint to add allegations and parties relating to difficulties he alleges he experienced as a result of the new eyeglasses he received after his March, 2013 ophthalmologic exam. Plaintiff also challenged a subsequent refusal of the CJC to refer him to an ophthalmologist for additional care.

On November 4, 2013, the deadline for filing any such motions under the CMO, Defendants filed their motion for summary judgment. Plaintiff responded to that motion

on December 2, 2013, and Defendants filed their reply on December 12, 2013. On December 4, 2013, almost seven months after the deadline for amendments of the complaint and after the filing of the motion for summary judgment, Plaintiff filed a third motion to amend his complaint seeking to substitute the City of Saint Louis in place of the SLDPS. On the same day, Plaintiff also filed motions for court orders mandating that he receive telephone access and access to Westlaw Online at the CJC.

On December 17, 2013, two months after the close of discovery, Plaintiff filed a motion to compel production of documents to obtain the files related to the grievances he filed with respect to his eyeglasses. (Doc. No. 81).

Finally, on March 24, 2014, Plaintiff, having been transferred to the ERDCC in Bonne Terre, Missouri, filed a motion for a court order mandating that he receive access to a "constitutionally adequate law library" at that facility. Doc. No. 85.

## II. **Plaintiff's Motions to Amend**

Plaintiff's motions for leave to amend his complaint will be denied for failure to show good cause for departure from the terms of the Court's CMO.

In circumstances where a party seeks leave to amend a pleading outside the deadline established by the court's scheduling order, the party must satisfy the good-cause standard of Rule 16(b)(4), rather than the more liberal standard of Rule 15(a).[4]

---

[4] Even when the more liberal standard of Rule 15(a) is applied, "[a] district court may deny leave to amend if there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment. Duplicative and frivolous claims are futile." *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) (internal quotation and citation omitted).

*Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). Under Eighth Circuit law, "a motion for leave to amend filed outside the district court's Rule 16(b) scheduling order requires a showing of good cause." *Williams v. Tesco Servs. Inc.*, 719 F.3d 968, 977 (8th Cir. 2013). In order to meet the "good cause" requirement, a party must establish "'diligence in attempting to meet the order's requirements.'" *Sherman*, 532 F.3d at 716-17 (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)). In addition, leave to amend is properly denied when the proposed amendment would be futile. *See Zutz v. Nelson*, 601 F.3d 842, 852 (8th Cir. 2010). And a proposed amendment is deemed futile when "the district court reache[s] the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6)." *Id.* at 850 (citation omitted).

     A. <u>The October 25, 2013 Motion for Leave to Amend</u>

     With respect to the first proposed amendment, filed on October 25, 2013, Plaintiff fails to establish diligence and hence, good cause for the Court to grant him leave to amend more than five months after the date for amendment specified in the CMO and after the close of discovery. Plaintiff's proposed amendment seeks to add new parties and includes allegations about the new eyeglasses he received on March 19, 2013. Plaintiff alleges in the proposed amended complaint that he "had a problem with the new eyeglasses as soon as I put them on . . . ." Doc. No. 66 at 2. Yet Plaintiff fails to explain why he waited seven months to seek leave to amend the complaint to add these allegations. Moreover, the Court cannot permit Plaintiff to continuously amend his complaint whenever he experiences new problems regarding his medical care. *See*

*Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) (holding that denial of a motion to amend a complaint approximately five months after the deadline set forth in the scheduling order is appropriate where the motion fails to state "persuasive reasons for the delay"); *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (denying a motion for leave to amend filed seven weeks before the end of the discovery and ten months after the scheduling order was entered).

In addition, even if Plaintiff had shown diligence in seeking leave to amend, the prejudice to Defendants in this situation persuades the Court that the granting of leave to amend would not be proper here. Plaintiffs initial complaint related to a refusal to grant requests for eyeglasses, and an alleged policy to refuse eye glasses for a one-year period. While the proposed amendment also relates to eyeglasses, it is markedly different and names different parties. Permitting amendment of the complaint when discovery has closed prejudices Defendants by requiring them to defend against new claims and wait for resolution of the claims against them while service and discovery proceed with respect to the newly added claims and parties. *See Sherman*, 532 F.3d at 717 (holding that even if the party seeking leave shows he has been diligent in attempting to comply with the court's timeline, the court also properly considers whether the non-movant will be prejudiced if the amendment is allowed).

On the basis of the foregoing, the Court will deny, without prejudice, Plaintiff's October 25, 2013 motion for leave to amend his complaint.

B. <u>The December 4, 2013 Motion for Leave to Amend</u>

On December 4, 2013, seven months after the CMO deadline for amendment of the complaint, two months after the close of discovery, and after the filing of the motion for summary judgment, Plaintiff filed another motion for leave to amend his complaint. Upon consideration of this motion, the Court again concludes that Plaintiff fails to establish good cause for his delay in seeking leave to amend. *Williams*, 719 F.3d at 977.

In support of his motion, Plaintiff asserts that he now realizes that he may have named the wrong party as a defendant and claims his ignorance of the law as the cause for the delay. The Court does not find this argument persuasive. *Pro se* litigants are expected to abide by the Court's requirements and are subject to the same substantive and procedural requirements as other litigants. *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (holding that *pro se* parties are "not excused from failing to comply with substantive and procedural law"). Therefore, Plaintiff's claim of unfamiliarity with the law is neither an excuse for lack of diligence nor good cause for waiver of the requirements of the CMO. *Sherman*, 532 F.3d at 716-17 (requiring a showing of "diligence in attempting to meet the order's requirements" to establish good cause) (internal quotation omitted). More importantly, however, the Court concludes that this motion for leave also should be denied on the basis of futility. As more fully discussed below, the amendment Plaintiff proposes–the substitution of the City of St. Louis for the SLDPS–would nonetheless fail as a matter of law. *See Zutz*, 601 F.3d at 852.

For these reasons, Plaintiff's December 4, 2013, motion to amend his complaint will be denied.

III. **Plaintiff's Motion to Compel**

On December 17, 2013, Plaintiff filed a motion seeking to compel production of his inmate grievance file. Defendants responded to Plaintiff's request for the grievance file stating that "[o]ther than documents which have been produced to Plaintiff, Defendant has no such documents within its possession or control." Doc. No. 82. Plaintiff argues that under the Department of Correction's document retention policy, an inmate grievance file must be maintained for five years and therefore, that the file relating to the grievance he filed in July of 2012 should presently remain within Defendants' control. DOC Policy Part VIII (k)(8).

Plaintiff filed his motion to compel almost two months after the close of discovery and after the filing of Defendants' motion for summary judgment, but fails to establish good cause for this delay. Plaintiff asserts that he made several requests for the grievance file, but the record does not substantiate his assertion. Before the close of discovery, Plaintiff filed a "motion for production," which the Court construed as a motion to compel, but that motion made no specific reference to the grievance file and failed to identify any delinquent discovery responses. Doc. No. 56. Finally, the Court notes that this is not a case where defendants' dilatory or evasive responses have impeded discovery. As Plaintiff acknowledges, Defendants responded to the discovery requests he propounded by producing many pages of relevant documents.

Therefore, in light of Plaintiff's lack of diligence or demonstration of good cause for that lack of diligence, the Court concludes that the motion to compel should be denied. *See Sherman*, 532 F.3d at 717.

IV.  **Motions for Access to Telephone, Westlaw Online, and Law Library**

During the course of this action, Plaintiff filed several motions seeking a court order requiring that he be given access to the telephone, Westlaw Online, a law library, and legal research materials.  The Court denied those motions.  *See* Doc. No. 34 (denying without prejudice motion seeking access to "law library" and "Westlaw Online"); Doc. No 39 (denying without prejudice motion seeking access to "legal books"); and Doc. No. 64 (denying with prejudice a motion seeking access to telephone).

Of the three remaining motions for court orders related to conditions of confinement, two were filed while Plaintiff was housed at the CJC and relate to conditions there.  The third motion relates to conditions at the ERDCC at Bonne Terre, Missouri.

As of the date of this Order, Plaintiff is no longer an inmate at the CJC.  In March, 2014, he was transferred to the ERDCC, and on June 2, 2014, he notified the Court that he had been transferred to the Farmington Correctional Center in Farmington, Missouri.  *See* Doc. Nos. 84 and 88.

Inasmuch as Plaintiff is now confined at another facility, the motions relating to conditions at the CJC will be denied as moot.  In the remaining motion, Plaintiff sought an order granting him law library access while he was housed at the ERDCC in Bonne Terre.  Similarly, because Plaintiff is no longer an inmate at the ERDCC, the Court also will deny as moot Plaintiff's motion for law library access at the ERDCC.

## V. **Plaintiff's Stipulation for Protective Order**

Plaintiff's October 18, 2013 "Stipulation for Protective Order" gives no indication that the parties had in fact agreed upon its terms. For this reason, to the extent that the stipulation may be construed as a motion it will be denied.

## VI. **Defendants' Motion for Summary Judgment**

### A. The Undisputed Facts

Unless otherwise indicated, the record reveals that the following facts are undisputed.

On December 20, 2011, Plaintiff was placed in the custody of the CJC as a pretrial detainee. The CJC is located in the City of St. Louis (the "City") and operated by the SLDPS. Healthcare services for offenders at the CJC are provided pursuant to a contract with Corizon, Inc. Detainees at the CJC may obtain medical care by completing a health services request form stating the nature of their medical issue. Medical staff responsible for providing care to offenders review the requests and refer offenders to the appropriate department for care. *See* Doc. No. 69-3 at 2, ¶¶ 5, 7-8.

The policies of the SLDPS allow detainees to hold personal property in the form of prescription eyeglasses, but Plaintiff did not bring prescription eyeglasses with him when he was admitted to the CJC. Eyeglasses with metal frames are not permitted within the CJC because metal items are generally considered a threat to security. Offenders are permitted to wear prescription eyeglasses with plastic frames and Plaintiff admits that he was allowed to have prescription eyeglasses with plastic frames. Offenders may purchase non-prescription reading glasses at the CJC commissary. Apart from requiring

that eyeglasses be plastic, the SLDPS maintains no other policies relating to eyeglasses, ophthalmological examinations, or eye care generally.

Hatter is employed by Corizon, Inc. ("Corizon"), not by the CJC or the SLDPS. As the Director of Nursing at the CJC, she assists with administrative responsibilities within the medical unit and responds to informal resolution requests ("IRRs") from offenders.[5] She is not responsible for reviewing health services request forms or making decisions regarding offenders' receipt of medical care. *Id*. It is undisputed that Hatter was not personally involved with the decision to provide, and did not personally provide, medical care to Plaintiff. *Id*. at 2, ¶5.

When Plaintiff arrived at the CJC he did not have his prescription eyeglasses with him. In June 2012, six months after Plaintiff's admission to CJC, Plaintiff received his prescription eyeglasses from his wife and was permitted to use those eyeglasses at CJC. There is no record of Plaintiff complaining of headaches prior to receiving his prescription eyeglasses.

Plaintiff submitted six medical services requests seeking new eyeglasses. These requests were made on January 3, 2012; June 27, 2012; December 20, 2012; January 20, 2013; February 21, 2013; and February 26, 2013. *See* Doc. No. 69-4. None of these requests stated that there were any medical issues relating to his eyes or the lack of an updated prescription, nor did they indicate that Plaintiff was having headaches.

On January 3, 2012, Plaintiff filed a request for medical services stating among other things, "need eyeglasses." *Id.* at 25. On or about June 27, 2012, Plaintiff filed

---

[5] An IRR is the first step in the SLDPS grievance process.

another request for medical services, reporting that he "[r]eceived glasses – prescription out of date. Need to see an optometrist to get prescription updated." *Id.* at 23. Plaintiff did not state that he was having headaches or indicate any other medical concerns in this request. *Id.* On July 2, 2012, in response to Plaintiff's request for medical services, a prison physician examined Plaintiff and noted that, among other things, Plaintiff was complaining of headaches which Plaintiff thought were related to poor vision. *See id.*, at 22. The doctor prescribed ibuprofen and acetaminophen.[6] *See id.*

On July 9, 2012, Plaintiff sent Hatter a letter explaining that obtaining his eyeglasses from his wife had not resolved his problem and stating that his eyeglasses "caus[e] my eyes to strain. So I have a headache without my glasses and a little worse with them." *Id.* at 21. In the letter Plaintiff also stated that his wife had spoken with an optometrist who said that "if [his] old script was not helping [he] needed to get another eye exam due to [his] eyes were getting worse due to not wearing [his] glasses and [his] eyes starting to compensate." *Id.*

On July 18, 2012, Plaintiff filed an IRR indicating that he "sent a letter down to Hatter in medical requesting to talk to her concerning my eyeglass[es]"and that "[a]s of today's date I have yet to hear from her to discuss my complaint." Doc. No. 69-3 at 6. On or about August 6, 2012, Hatter responded to the IRR stating that "[i]n order for [Plaintiff] to get a new prescription for eyeglasses, he has to have been incarcerated for

---

[6]    Plaintiff regularly received acetaminophen or ibuprofen during his confinement at the CJC. *See* Doc. No. 69-2, at ¶ 22; *Id.* at 2-7.

one year." Hatter also indicated that Plaintiff's request could be reviewed again in December. *See id.* at 2, ¶¶ 8, 12.

In her affidavit, Hatter indicates that her response to Plaintiff's IRR was based upon her understanding and the information provided by Corizon, that persons confined at the CJC are referred on an annual basis for an ophthalmologic exam, unless the medical provider evaluating the patient indicates there is a medical need for earlier services and makes the referral prior to the annual check-up. *See id.* at 3, ¶¶ 15-17; 7.

Hatter also attests that at the time she responded to the IRR, she was aware that Plaintiff had prescription eyeglasses in his possession, but that she had no knowledge that he had a serious medical need for a new prescription. *See id.* at 3, ¶¶ 18-19. It is undisputed that prior to August 6, 2012, the time that Hatter would have reviewed the medical records in responding to the IRR, no medical professional had recommended that Plaintiff be seen by an ophthalmologist. *See id.* at 3, ¶19.

On August 9, 2012, Plaintiff submitted a medical services request stating "headaches still coming on." Doc. No. 69-4 at 18. Plaintiff made no reference to prescription eyeglasses in that request. *See id.* In response to this request, Plaintiff was seen by nursing staff on August 15, 2012. At that time the headaches were not attributed to any issues with Plaintiff's eyes or his prescription eyeglasses. *See id.* at 16-17. The nurse instructed Plaintiff to return to sick call if his symptoms persisted. *See id.*

On or about September 13, 2012, Plaintiff submitted a health services request form seeking "follow up with Dr. due to still having chest pains and headaches." *See id.* at 20. The request makes no mention of prescription eyeglasses or eye issues. *See id.* On

September 14, 2012, in response to this request, Plaintiff was seen by a physician. The physician diagnosed pectoral muscle pain and prescribed ibuprofen and acetaminophen. *See id.*

On or about December 20, 2012, noting that he had been at the CJC for exactly one year, Plaintiff submitted a health services request form stating, "[m]y eyeglasses are out of date and I need to see an optometrist to get my [pres]scrip[tion] updated." *Id*. at 15. Plaintiff did not state that he was having headaches or indicate any other medical concerns in this request. *See id* at 14.

On January 4, 2013, Plaintiff submitted a health services request form requesting "follow-up with doctor about chest pains and headaches." *Id.* The written request makes no mention of eyeglasses or vision issues. *See id.* On January 9, 2013, Plaintiff received his annual medical examination. *See id*. at 1-8. During the examination, a vision test was performed indicating that Plaintiff had 20/50 vision without his glasses. *See id.* at 1.

On or about January 20, 2013, Plaintiff submitted a health services request form indicating he was seeking "follow up about eyeglasses." *See id.* at 13. Plaintiff did not state that he was having headaches or indicate any other medical concerns in this request. *See id.* In response to his January 20 request, Plaintiff was referred to a physician for further evaluation, who subsequently referred him for an outside ophthalmological visit. *See id.* at 10, 13. Plaintiff saw an ophthalmologist on March 12, 2013. *See id.* at 8-9. The ophthalmologist provided Plaintiff with a new prescription for his eyeglasses noting Plaintiff's complaint as "blurry vision at a distance." *Id.* at 9.

B.  Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (internal quotation omitted).  "The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe v. Cnty. of St. Louis, MO.*, 690 F.3d 1004, 1011 (8th Cir. 2012) (internal quotation omitted).  "'Mere allegations not supported with specific facts are insufficient to establish a material issue of fact and will not withstand a summary judgment motion.'" *Depositors Ins. Co. v. Wal-Mart Stores, Inc.,* 506 F.3d 1092, 1095 n.3 (8th Cir. 2007) (quoting *Henthorn v. Capitol Commc'n, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004)).  "To establish a genuine factual issue, a party may not merely point to unsupported self-serving allegations." *Residential Funding Co., LLC v. Terrace Mortg. Co.*, 725 F.3d 910, 915 (8th Cir. 2013) (internal quotation omitted).  The nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Gannon Intern., Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id*.  The non-moving party

"must substantiate its allegations with sufficient probative evidence that would permit a finding in its favor." *Residential Funding, Co., LLC*, 725 F.3d at 915 (internal quotation and citation omitted). Finally, the movant is entitled to summary judgment when the non-moving party has failed "to establish the existence of an element essential to that party's case . . . on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). No genuine issue of fact exists in such a case because a "complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 323.

## VII. __Plaintiff's Claim against Defendant Hatter__

Plaintiff asserts that Defendant Hatter violated his constitutional rights by exhibiting deliberate indifference to his serious medical need for an eye exam and/or new prescription eyeglasses. Since Plaintiff was a pretrial detainee at the time of his incarceration, the due process standard of the Fourteenth Amendment applies to determine the constitutionality of his conditions of confinement. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In the Eighth Circuit, the standards applied to such claims are the same as those applied to Eighth Amendment claims. *Vaughn v. Greene Cnty., AR*, 438 F.3d 845, 850 (8th Cir. 2006); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004).

Under the Eighth Amendment, a prisoner's constitutional rights are violated if prison officials exhibit deliberate indifference to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To prevail on his claim, Plaintiff must establish that he suffered from an objectively serious medical need and that a defendant actually knew of, but deliberately

disregarded the need. *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013); *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011); *Johnson v. Hamilton*, 452 F.3d 967, 972-73 (8th Cir. 2006).

    A. <u>Serious Medical Need</u>

    Upon review of the undisputed facts the Court concludes that Plaintiff has not come forward with evidence creating a genuine issue of material fact with respect to the existence of an objectively serious medical need. A "serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub*, 638 F.3d at 914. Courts in this District and others have concluded as a matter of law that the denial of eyeglasses and eye medication or headaches and blurry vision resulting from an incorrect eyeglass prescription are insufficient to establish an objectively serious medical need. *See, e.g.*, *Dunville v. Morton*, No. 99-1122, 2000 WL 1206653, at*2 (7th Cir. Aug. 22, 2000) (finding no Eighth Amendment violation where a prisoner waited 15 months for an eye examination and had complained about eye pain and headaches during that period because the plaintiff could not establish detriment from delayed treatment of a medical condition never even established to be serious); *Washington v. City of University City*, No. 4:09–CV–0784 HEA, 2012 WL 1134029, at *4-5 (E.D. Mo. Mar. 31, 2012) (finding no serious medical need where a pretrial detainee alleged that he was denied eyeglasses and eye medication); *Rodriguez v. Wiley*, No. 08CV02505-PAB-CBS, 2010 WL 1348017, at *12 (D. Colo. Feb. 25, 2010) (holding, where the plaintiff prisoner demonstrated that he had been denied prescription eyeglasses over an 18 month period,

that he failed to establish a claim of deliberate indifference, in part because he failed to offer evidence that the alleged denial of medical attention "contributed to or intensified his condition") (internal quotation omitted); *Davidson v. Scully*, 155 F. Supp. 2d 77, 88-89 (S.D.N.Y. 2001) (concluding that headaches and blurry vision resulting from an incorrect eyeglasses prescription "are not a sufficiently serious condition" to establish a violation of the Eighth Amendment).

The Court notes that this is not a case where the plaintiff has demonstrated that he was unable to see or that he experienced physical degeneration of his eyesight as a result of the allegedly out-of-date prescription eyeglasses. If it were, the outcome might be different. *See, e.g.*, *Koehl v. Dalsheim*, 85 F.3d 86, 87-88 (2d Cir. 1996) (finding a serious medical condition where the confiscation of plaintiff's glasses caused physical degeneration that rendered plaintiff almost sightless and caused headaches); *Benter v. Peck*, 825 F. Supp. 1411, 1416-17 (S.D. Iowa 1993) (holding that the plaintiff prisoner had a serious medical need where his eyesight, without glasses, fell within the parameters of blindness). The closest that Plaintiff comes to establishing these facts is the letter he sent to Hatter recounting what an optometrist, who had not spoken with or examined Plaintiff, told Plaintiff's wife. Doc. No. 69-4 at 21. This statement, without more, is not sufficient to show a serious medical need. *Santiago*, 707 F.3d at 990.

Upon consideration of the relevant case law and the record before it, the Court concludes that Plaintiff cannot demonstrate that he had an objectively serious medical need for an ophthalmologic examination and/or a new prescription for his eyeglasses during the relevant period of his confinement.

In addition, in response to the motion for summary judgment, Plaintiff offers no medical evidence to "'establish the detrimental effect of delay in medical treatment.'" *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)) (granting summary judgment for the defendants, where the plaintiff "failed to submit verifying medical evidence that delay in the provision of sunglasses had any adverse effect on his prognosis"). In circumstances where the plaintiff alleges that the delay in treatment is itself the constitutional deprivation, "'the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment.'" *Laughlin*, 430 F.3d at 929 (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (internal quotation omitted)).

It is undisputed that Plaintiff received the ophthalmological exam that he sought, as well as an updated pair of prescription eyeglasses. His complaint is that the medical attention he sought was delayed in the interim, but there is no medical evidence in the record to establish that the delay had a detrimental effect on his health. Admittedly, in his letter to Hatter, Plaintiff states that his eyes "were getting worse" from "straining to compensate" during the time he was waiting for his wife to bring him his glasses. Doc. No. 69-4 at 21. But this assertion without more is not medical evidence of a detrimental effect on his health. And Plaintiff has not come forward with evidence to establish a causal link between the headaches he alleges he experienced and the delay in his receipt of new eyeglasses. Indeed, numerous times when he received treatment for headaches and other pains, no mention is made of eyeglasses or other eye-related issues. Accordingly, the Court cannot conclude that he has established a serious medical need.

*See Laughlin*, 430 F.3d at 929; *Beyerbach*, 49 F.3d at 1326.

    B.  <u>Deliberate Indifference</u>

Upon review of the record, the Court further concludes that even if the existence of a serious medical need is presumed, Plaintiff cannot demonstrate that she knew of and deliberately disregarded Plaintiff's request for updated prescription eyeglasses.

A prison official's failure to treat a medical condition does not violate the Eighth Amendment unless the prison official knew that the condition created a serious risk to the inmate's health and failed to act on that information.  *Farmer*, 511 U.S. at 837.  Under this subjective standard, an official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety.  *Id.*  The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw that inference.  *Id.*; *but see Smith v. Kolitwenzew*, No. 13-2179-CSB-DGB, 2013 WL 6669163, at *3 (C.D. Ill. Dec. 18, 2013) (holding that a prisoner stated a claim for deliberate indifference where nurse and prison officials knew of his need for glasses but prevented him from obtaining treatment by failing to deliver his medical requests to the appropriate persons and the plaintiff's sight deteriorated as a result of the delay in treatment).

In this case, Hatter's only involvement with Plaintiff was her receipt of, and response to, his July 9, 2012 letter and July18, 2012 IRR requesting an eye exam and new prescription eyeglasses.  It is undisputed that at the time Hatter was called upon to address the IRR, no treating medical provider had opined that Plaintiff needed to be seen by an ophthalmologist before his annual checkup.  To the contrary, Plaintiff saw a prison

physician on July 2, 2012, at which his vision and headaches were discussed, and that physician did not refer Plaintiff to an ophthalmologist.

Hatter responded to the IRR by informing Plaintiff of the Corizon policy that offenders generally had to wait one year to receive an examination by an outside ophthalmologist and obtain new prescription eyeglasses unless the medical provider evaluating the patient indicates there is a medical need for earlier services and makes the referral prior to the annual check-up. Because Hatter was not aware of such a recommendation (and there was no such recommendation), and Plaintiff's medical records gave no indication of a serious medical issue related to Plaintiff's request for new prescription eyeglasses, there is no basis upon which a jury could find that she was deliberately indifferent to Plaintiff's request. *Compare Washington*, 2012 WL 1134029, at *4-5, *with Kolitwenzew*, 2013 WL 6669163, at *3.

Plaintiff's allegation that he experienced headaches due to the out-of-date prescription does not change this result. His medical records reflect that during the time period relevant to the complaint he requested medical attention due to headaches on four occasions: July 2, 2012 (doctor's note indicates that Plaintiff was complaining of headache which Plaintiff thought was related to poor vision); August 9, 2012 (stating "headaches still coming on"); September 13, 2012 (seeking medical attention for "chest pains and headaches"); January 4, 2013 (seeking "follow-up with doctor about chest pains and headaches"). Doc. No. 69-4 at 14, 18, 20 & 22. The record also reflects that after each of these requests, Plaintiff received reasonably prompt medical attention (i.e., within a few days) and medication for complaints of headache.

Hatter also argues that Plaintiff cannot establish liability here because he failed to establish a connection between his request for a new prescription and the headaches he reported in his medical services requests. The Court cannot agree. The record establishes that Plaintiff believed and told others, including medical personnel, that his headaches were caused by his out dated prescription. *Id*. at 21, 22. However, Plaintiff's assertion that such a connection existed is not sufficient to establish Hatter's liability. *Jones v. Minn. Dept. of Corrections*, 512 F.3d 478, 481-82 (8th Cir. 2008) (holding that for purposes of an Eighth Amendment claim of deliberate indifference to a prisoner's serious medical need, a showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions). At the time that Hatter responded to the grievance, the medical records did not establish that any medical provider had concurred in that opinion nor that referral for an earlier ophthalmologic exam was required. *See Farmer*, 511 U.S. at 837.

## VIII.  **Plaintiff's Claim against the City of St. Louis Department of Public Safety**

### A.  Suable Entity

Plaintiff names the SLDPS, a department of the City, as a defendant in this case. Relevant precedent establishes, however, that a department or subdivision of local government is not a "juridical" or suable entity under 42 U.S.C. § 1983. *Ketchum v. City of West Memphis, AR.*, 974 F.2d 81, 82 (8th Cir. 1992). Therefore, under *Ketchum* and its progeny, Plaintiff's claim against the City of St. Louis Department of Public Safety fails as a matter of law. *Ballard v. Missouri*, No. 4:13CV528 JAR, 2013 WL 1720966, at *3 (E.D. Mo. April 22, 2013) (holding that "[p]laintiff's claims against the City of St.

Louis Department of Public Safety, the St. Louis County Justice Center, the City of St.

Louis Justice Center, and MSI/Workhouse are legally frivolous because these defendants

are not suable entities"); *see also Wallace v. St. Louis City Justice Ctr.*, No. 4:12CV2291

JAR, 2013 WL 3773971, at *2 (E.D. Mo. July 17, 2013) (dismissing claims against the

St. Louis City Justice Center because it is not a suable entity).  For this reason, Defendant

SLDPS is entitled to judgment as a matter of law on Plaintiff's claim against it.

B.  Municipal Liability

In addition, the Court concludes that even if the SLDPS were a suable entity or if

Plaintiff had been permitted to amend his complaint to substitute the City of Saint Louis

for the SLDPS, Plaintiff would be unable to establish municipal liability on the basis of

the record before the Court.

"[I]t is well established 'that a municipality cannot be held liable on a respondeat

superior theory, that is, solely because it employs a tortfeasor.'"  *Johnson v. Douglas*

*Cnty Med. Dept.*, 725 F.3d 825, 828 (8th Cir. 2013) (quoting *Atkinson v. City of Mountain*

*View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013)) (internal quotation omitted).

Nevertheless, a municipality may be sued directly under § 1983 where:

> the action that is alleged to be unconstitutional implements or executes a
> policy statement, ordinance, regulation, or decision officially adopted and
> promulgated by that body's officers.  Moreover, . . . local governments . . .
> may be sued for constitutional deprivations visited pursuant to
> governmental 'custom' even though such a custom has not received formal
> approval through the body's official decisionmaking channels.

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *see also Veatch v. Bartels*

*Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (explaining that under § 1983, the

plaintiff must demonstrate either that the municipality had a policy or custom that caused the constitutional violation or that the municipality or a municipal employee exhibited deliberate indifference to the plaintiff's constitutional rights by failing to adequately train or supervise its employees) (citing *City of Canton v. Harris*, 489 U.S. 378, 378-92 (1989)).

The predicate for any claim of municipal liability is a constitutional violation. *Avalos v. City of Glenwood*, 382 F.3d 792, 802 (8th Cir. 2004). In other words, "[i]n order for municipal liability to attach, individual liability must first be found on an underlying substantive claim." *Burton v. St. Louis Bd. of Police Com'rs*, 731 F.3d 784, 799 (8th Cir. 2013) (quoting *Cooper v. Martin*, 634 F.3d 477, 481-82 (8th Cir. 2011)); *see also Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007) (quoting *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005)). In the absence of an underlying constitutional violation, no further inquiry regarding the existence of a relevant municipal policy and custom or of deliberate indifference exhibited by inadequate training or supervision is required. *See Burton v. St. Louis Bd. of Police Com'rs*, 731 F.3d at 799; *see also Russell v. Hennepin Cnty.*, 420 F.3d 841, 846 (8th Cir. 2005).

In light of these principles, Plaintiff's claim of municipal liability fails as a matter of law. First, in the absence of individual constitutional liability on the part of Hatter, Plaintiff cannot establish a claim for municipal liability against either the SLDPS or the City of Saint Louis, had it been added as a party. *Burton*, 731 F.3d at 799. Second, even if Plaintiff could establish the individual liability of Hatter, that liability could not form the basis for municipal liability here because Hatter is neither an agent nor an employee

of the SLDPS or the City. And Hatter acted pursuant to a policy or custom of her employer, Corizon, the entity contracted by the SLDPS to provide medical services to offenders. *See* Doc. No. 69-3 at 7, 8. Even if the Plaintiff had been permitted to substitute the City of Saint Louis for the SLDPS there is no evidence that Hatter relied upon a policy or custom of the City. *Veatch*, 627 F.3d at 1257.

Finally, even if Corizon's policy were deemed the policy of the SLDPS or the City, Plaintiff's claim of municipal liability fails because Plaintiff has not come forward with evidence to establish a direct causal link between a policy or custom of the SLDPS and the alleged constitutional deprivation.[7] *Parrish v. Ball*, 594 F.3d 993, 1000 (8th Cir. 2010) (noting the requirement that the plaintiff prove that the policy or custom "was the 'moving force' behind the injury alleged") (internal quotation omitted).

The policy at issue provides for an annual eye exam and permits more frequent visits to an ophthalmologist "where the medical practitioner seeing that patient indicates there is an immediate need for such services." *See* Doc. No. 69-3 at 3, ¶15. It does not prohibit more frequent eye examinations.

In this case Plaintiff had his annual eye exam as required by the policy, and although he was examined by a physician on several occasions prior to that time, there is no evidence that any medical practitioner who treated him recommended an earlier referral to an ophthalmologist. The gravamen of Plaintiff's complaint is that he should have received an earlier referral, but the policy did not cause that delay. Under the

---

[7] Although causation is generally a question of fact, "where the causal link is too tenuous" and "the question is so free from doubt as to justify taking it from the [fact finder]" a court may decide the issue as a matter of law. *Parrish*, 594 F.3d at 1000.

policy, the referral determination is entrusted to the medical practitioner, and the fact that Plaintiff disagrees with that determination is not, without more, sufficient to establish a basis for relief here. *See Jones*, 512 F.3d at 482. (8th Cir. 2008) (requiring more than "mere disagreement" about the treatment provided). Therefore, there is no evidence that the disputed policy caused Plaintiff injury.

## Conclusion

For the reasons set forth above, the Court concludes that Plaintiff's motions for protective order, to amend his complaint, to compel, for direct access to a telephone, for direct access to Westlaw Online, and for a court order providing him access to a law library should be denied. In addition, the Court concludes that Defendants' motion for summary judgment should be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for protective order is **DENIED**. (Doc. No. 65.)

**IT IS FURTHER ORDERED** that Plaintiff's October 25, 2013 motion to amend his complaint is **DENIED**. (Doc. No. 66.)

**IT IS FURTHER ORDERED** that Defendants' motion summary judgment is **GRANTED**. (Doc. No. 67.)

**IT IS FURTHER ORDERED** that Plaintiff's December 4, 2013 motion to amend his complaint is **DENIED**. (Doc. No. 72.)

**IT IS FURTHER ORDERED** that Plaintiff's motion for direct access to Westlaw Online is **DENIED as moot**. (Doc. No. 74.)

**IT IS FURTHER ORDERED** that Plaintiff's motion for court order for access to phone is **DENIED as moot**.  (Doc. No. 76.)

**IT IS FURTHER ORDERED** that Plaintiff's motion to compel and for sanctions is **DENIED**.  (Doc. No. 81.)

**IT IS FURTHER ORDERED** that Plaintiff's motion for court order (related to law library access) is **DENIED without prejudice.**  (Doc. No. 85.)

**IT IS FURTHER ORDERED** that Plaintiff's allegations regarding violation of his First Amendment rights due to the alleged withholding of his mail are **DISMISSED without prejudice** for failure to prosecute.

A separate judgment shall accompany this Memorandum and Order.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 16th day of July, 2014.